IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|   |   |   |
|---|---|---|
|  | : |  |
| BERNARD LEWIS |  |  |
|  | : |  |
| v. | : | Civil Action No. DKC 13-1561 |
|  | : |  |
| MCCABE, WEISBERG & CONWAY, LLC et al. | : |  |
|  | : |  |

### MEMORANDUM OPINION

Presently pending and ready for resolution in this consumer lending action are a motion to dismiss filed by Defendant McCabe, Weisberg & Conway, LLC ("McCabe") (ECF No. 14) and a motion to dismiss filed by Defendants Ocwen Loan Servicing, LLC., Deutsche Bank National Trust Company, and Homeward Residential, Inc. (ECF No. 17). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted.

## I.  Background

### A. Factual Background

On December 13, 2004, Plaintiff Bernard Lewis ("Plaintiff"), and his wife, Melvina Lewis, obtained from Ameriquest Mortgage Company a home mortgage loan, in the amount of $285,000, to purchase residential property located at 3100

Altair Lane, Upper Marlboro, Maryland 20774.[1]   (ECF No. 10 ¶ 8; ECF No. 14-1, at 1).   The loan was evidenced by a promissory note ("Note") and secured by a Deed of Trust dated December 13, 2004.  (ECF No. 14-1, at 5-19).   The Deed of Trust was signed by both Bernard and Melvina Lewis.  (*Id.* at 18).   The version of the Note that Defendants provide appears to have been signed only by Plaintiff Bernard Lewis, but Plaintiff insists that the original Note contained his wife's signature as well.  Thus, Plaintiff believes that Defendants do not have authority to enforce any lien on his Property because they hold a "fabricated" Note.  (*Id.* at 4).   Defendant Homeward Residential, Inc. ("Homeward") serviced the loan until that responsibility was transferred to Defendant Ocwen Loan Servicing, LLC ("Ocwen") sometime in 2013.

On January 16, 2009, Citi Residential Lending, Inc., as attorney-in-fact for Ameriquest Mortgage Company, assigned or transferred the Note and Deed of Trust to Deutsche Bank National Trust Company ("Deutsche Bank"), as trustee for Ameriquest

---

[1] The following facts are either set forth in the complaint, supported by documents referenced or relied upon in the complaint, or are matters of public record of which the court is permitted to take judicial notice.  *American Chiropractic Assoc. v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (noting that as a general rule, courts should not consider extrinsic evidence at the 12(b)(6) stage, but the court may consider a document that a party attaches to a motion to dismiss if "it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity.").

Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-R1, pursuant to a Pooling and Servicing Agreement dated February 1, 2005. (*Id.* at 25).[2] The assignment was recorded among the land records of Prince George's County, Maryland on February 19, 2009. (*Id.*). The Deed of Appointment of Substitute Trustees, recorded in the land records of Prince George's County on February 29, 2012, indicates that Deutsche Bank is the present holder or authorized agent of the holder of the Note secured by the Deed of Trust. (*Id.* at 27). The Deed of Appointment of Substitute Trustees appointed as substitute trustees certain attorneys from the law firm McCabe, Weisberg & Conway, LLC, one of the Defendants here, including: Laura H.G. O'Sullivan; Deborah K. Curran; Erin M. Brady; Diana C. Theologou; Laura L. Latta; Jonathan Elefant; and Chasity Brown (collectively "Substitute Trustees"). (*Id.*).

Plaintiff asserts that Defendants declared the Note in default in the spring or summer of 2011. (ECF No. 10 ¶ 15). As a result of the loan default, on February 29, 2012, the Substitute Trustees docketed a foreclosure action as to the Property in the Circuit Court for Prince George's County,

---

[2] "The Pooling and Servicing agreement generally establishes the two entities – a trustee and a servicer – that are responsible for maintaining the trust into which a mortgage is bundled and sold during the securitization process." *Lomp v. Y.S. Mortg. Finance Corp.*, Civil Action No. WMN-13-1099, 2013 WL 6528909, at *1 n.2 (D.Md. Dec. 11, 2013).

Maryland.   Plaintiff  states  that  Deutsche  Bank  misrepresented that  it  was  the  holder  of  the  Note  because  the  Note  it  presented in  connection  with  the  foreclosure  proceeding  in  February  2012 lacked  Melvina  Lewis's  signature;  Plaintiff  represents  that Melvina  Lewis  signed  the  original  Note.   (*Id.* ¶ 10).   Thus, Plaintiff  believes  that  the  Note  which  Deutsche  Bank  possesses is  "fabricated."  (*Id.* ¶ 18).

Defendant  McCabe  sent  Plaintiff  a  letter  notifying  him  of the  foreclosure  sale  scheduled  for  February  5,  2013.   (*Id.* ¶ 19).   On December 4, 2012, during the course of the foreclosure proceedings,  Plaintiff  filed  a  voluntary  bankruptcy  petition  in the  United  States  Bankruptcy  Court  for  the  District  of  Maryland, Case No. 12-31619.   (ECF No. 14-1, at 29).[3]   On December 20, 2012,  Judge  Lipp  dismissed  the  petition  based  on  Plaintiff's failure  to  complete  required  filings.   (*Id.* at 30).

Plaintiff  asserts  that  on  January  19,  2013,  he  notified Defendant Homeward - the servicer of Plaintiff's loan prior to Ocwen - that the Note attached to the foreclosure action was not

---

[3]   Previously,   on   April   19,   2007,   Plaintiff   filed   a bankruptcy  petition  under  Chapter  13  of  the  bankruptcy  code.  *In re   Bernard   Stevenson   Lewis,   Jr.*,   Case   No.   07-13576 (Bankr.D.Md.).   On  July  13,  2007,  Deutsche  Bank  moved  for  relief from  the  automatic  stay,  and  attached  the  Note  and  Deed  of  Trust to  the  motion.   (ECF  No.  14-1,  at  33).   Defendants  maintain  that Plaintiff  did  not  challenge  the  validity  of  these  documents during  the  2007  bankruptcy  proceeding.   On  November  26,  2007, this  bankruptcy  case  was  dismissed  at  Plaintiff's  request.   *In re Bernard Stevenson Lewis, Jr.*, Case No. 07-13576, ECF No. 39.

the original Note.   (ECF No. 10 ¶ 20).   Plaintiff does not attach the actual letter to his amended complaint, but avers that in this correspondence, he arranged to pay the debt, requested a payoff statement, a current certified copy of the note, the opportunity to inspect the original note, and for an accounting of payments and charges on the loan.   (*Id.*). Plaintiff asserts that Defendants cancelled the scheduled foreclosure sale after receiving Plaintiff's January 19, 2013 letter.   On or around March 12, 2013, Defendant Homeward responded to Plaintiff's January 19, 2013 letter; this response stated that Melvina Lewis did not sign the original Note and attached an uncertified copy of the Note signed only by Plaintiff.   (*Id.* ¶ 22).   According to Plaintiff, the letter from Defendant Homeward claimed to include a payment history, but there was no payment history enclosed.   Furthermore, Defendant Homeward referred Plaintiff to Ocwen, the new loan servicer.

On March 26, 2013, Plaintiff sent a letter to Ocwen requesting a current and certified copy of the Note and a date and time to inspect the original Note.   (*Id.* ¶ 23).   Plaintiff avers that he made this request to Ocwen to establish that it was the holder of the Note and, therefore, legally entitled to enforce and collect payment on the mortgage loan.   Although Plaintiff also does not include a copy of this letter as an exhibit to the complaint, he asserts that he informed Ocwen that

he is "prepared to satisfy the debt and would like to verify that [he] is paying the 'holder' and that the original note will be returned to [him] as required by the Deed of Trust and Maryland law." (*Id.*). Plaintiff avers that Ocwen did not respond to this letter.

On May 21, 2013, McCabe sent Plaintiff another notice of a foreclosure sale set to occur on June 4, 2013, but then cancelled the sale. (*Id.* ¶¶ 24-26). McCabe again notified Plaintiff of a foreclosure sale in September or October 2013, scheduled for October 29, 2013. (*Id.* ¶ 27). Plaintiff avers that unlike the two prior notices regarding a foreclosure sale, McCabe did not cancel the October 29, 2013 sale. Plaintiff states that he was then forced to file for Chapter 13 bankruptcy in the United States Bankruptcy Court for the District of Maryland on October 28, 2013 in order to prevent his property from being sold. (*Id.* ¶ 28); *see In re Bernard S. Lewis, Jr.*, Case No. 13-28233, ECF No. 1 (Bankr.D.Md.). Consequently, Ocwen voluntarily cancelled the foreclosure sale of the Property scheduled for October 29, 2013 and dismissed the foreclosure case. Plaintiff's Chapter 13 bankruptcy case was closed on December 17, 2013. *In re Bernard S. Lewis, Jr.*, Case No. 13-28233, ECF No. 18.

Although Plaintiff does not identify the date of this event, he avers that Ocwen sent agents to the Property to take

6

possession of Plaintiff's home.  (ECF No. 10 ¶ 29).  Plaintiff believes that Ocwen's agents trespassed onto the Property and attempted to change the locks to the house.  According to Plaintiff, he spoke to Owen's agents on the phone and learned that Ocwen told the agents that the Property was vacant. Plaintiff asserts that the Property was not vacant and, as such, Ocwen did not satisfy conditions precedent to enter the Property. (*Id.* ¶ 34).

### B. Procedural Background

On May 30, 2013, Plaintiff, proceeding *pro se*, commenced this action against Defendants Erin M. Brady, McCabe, Homeward, Ocwen, and Deutsche Bank, alleging violations of the Fair Debt Collection Practices Act ("FDCPA") and the Maryland Consumer Debt Collection Act ("MCDCA").  (ECF No. 1).  On October, 21, 2013, Defendant McCabe moved to dismiss the complaint as to McCabe and Erin M. Brady, one of the appointed substitute trustees.  (ECF No. 7).  Plaintiff then filed an amended complaint on November 7, 2013, terminating Erin M. Brady as a party and removing the FDCPA claim.  (ECF No. 10).  Plaintiff's amended complaint alleges violations of the Real Estate Settlement Procedures Act ("RESPA") (count I), the Maryland Consumer Debt Collection Act ("MCDCA"), Md. Code Ann., Com. Law, § 14-201 *et seq.*, and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-101 *et seq.* (count II),

and a breach of contract claim (count IV).[4]   Plaintiff also includes as a separate count (count III) a request for declaratory judgment that the Note was signed by both Bernard and Melvina Lewis and that Defendants do not possess the original Note.  (*Id.* ¶ 61).

Defendant McCabe moved to dismiss on November 29, 2013. (ECF No. 14).  Defendants Homeward, Ocwen, and Deutsche Bank filed a separate motion to dismiss on December 24, 2013.  (ECF No. 17).  Plaintiff opposed both motions.  (ECF Nos. 16 & 22). Defendants Homeward, Ocwen, and Deutsche Bank filed a reply on January 27, 2014.  (ECF No. 23).

## II.  Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint.  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).   A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause

---

[4]   Plaintiff clarifies in the opposition to McCabe's motion to dismiss that he is *not* asserting RESPA and breach of contract claims against McCabe.  (ECF No. 16, at 1 n.1).

of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)).  In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**III. Analysis**

**A.   Judicial Estoppel**

Plaintiff asserts that Defendants cannot enforce the Note because they do not have the original Note, which Plaintiff alleges contained his wife's signature.  Defendant McCabe asserts that Plaintiff's claims are barred by judicial estoppel. Judicial estoppel is a preventative measure that courts may take to prevent a party from successfully asserting a position in a

prior proceeding and then attempting to assert a contradictory position in a subsequent proceeding. *Lowery v. Stovall*, 92 F.3d 219, 223-24 (4th Cir. 1996). As explained by the Fourth Circuit:

> While "the circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle, *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) [], in this circuit we generally require the presence of the following elements:
>
> First, the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation. The position at issue must be one of fact as opposed to one of law or legal theory. Second, the prior inconsistent position must have been accepted by the court. Lastly, the party against whom judicial estoppel is to be applied must have intentionally misled the court to gain unfair advantage.

*Whitten v. Fred's, Inc.*, 601 F. 3d 231, 241 (4th Cir. 2010); *In re Rood*, 448 B.R. 149, 160-61 (Bankr.D.Md. 2011).

McCabe states that Plaintiff did not previously challenge the validity of the Note, when Deutshe Bank attached copies of it in connection with the 2007 bankruptcy proceeding in which Plaintiff was a party. (ECF No. 14, at 6). McCabe asserts that the Note – which was filed with Deutsche Bank's motion for relief from the automatic stay in the 2007 bankruptcy proceeding - also lacked Melvina Lewis's signature, but Plaintiff did not object. McCabe believes that Plaintiff's failure to disclose any cause of action regarding the Note or to file an adversary

proceeding challenging the Note or the rights of Deutsche Bank precludes his current action challenging the validity of the Note and Defendants' authority to enforce it.   Plaintiff counters that none of the elements necessary to invoke judicial estoppel have been satisfied.

McCabe's arguments are unavailing.   First, McCabe has not shown that Plaintiff took an inconsistent position in a prior litigation by failing to challenge the validity of the Note. Second, there is no indication that the Bankruptcy Court accepted this prior inconsistent position, considering that Plaintiff voluntarily dismissed his Chapter 13 petition on November 26, 2007. *In re Bernard Stevenson Lewis, Jr.*, Case No. 07-13576, ECF No. 39.   Furthermore, McCabe does not even argue that Plaintiff acted with the intent to mislead the court. Accordingly, judicial estoppel does not bar Plaintiff's claims.

### B.   RESPA Violations

Plaintiff asserts that the January 26, 2013 letter to Homeward and March 25, 2013 letter to Ocwen constituted "qualified written requests" ("QWR") and that both Ocwen and Homeward failed to investigate and respond promptly under RESPA, as required by 12 U.S.C. § 2605(e).

12 U.S.C. § 2605(e) states that "[i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower . . . for information relating to the

servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days." A qualified written request is defined as:

> a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B). Creditors have sixty (60) days following the receipt of a QWR to make requested changes to the borrower's account, notify the borrower of the results of any investigation pertaining to the account, and transmit the name and telephone number of a representative who can answer any questions about the account. 12 U.S.C. § 2605(e)(2).

In moving to dismiss Plaintiff's RESPA claim, Defendants argue that Plaintiff's claim is deficient because he does not attach either the January or March 2013 letter to his complaint, but even crediting his allegations of the requests made therein, they do not constitute QWRs as they do not relate to servicing of his mortgage loan. Under RESPA, "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest

and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3). Although Plaintiff does not attach the two letters to his amended complaint, he alleges that in the January 19, 2013 letter to Homeward, he: (1) stated that the Note was "fabricated" and not the original Note; (2) announced that he made arrangements to pay the debt; (3) asked for a payoff statement and a current certified copy of the Note; and (4) requested to inspect the original Note and asked for an accounting of payments and charges on the loan. (ECF No. 10 ¶ 20). In the March 26, 2013 letter to Ocwen, Plaintiff allegedly: (1) requested a current, certified copy of the Note; (2) requested a date and time to inspect the original Note; (3) explained that his purpose was to establish that Ocwen was legally entitled to enforce the Note and collect payment; and (4) stated that he was prepared to satisfy the debt, but wanted to verify that Ocwen was the "holder" and that the original Note would be returned to him. (*Id.* ¶ 23).

In determining whether a given request constitutes a QWR, courts have drawn a distinction between communications related to the servicing of the loan, which are covered under RESPA, and those challenging the validity of a loan, which are not. Plaintiff's allegations concerning the information contained in the January and March letters are insufficient to make these

documents QWRs.   Although Plaintiff likely intended that they serve as QWRs, in substance, he sought the original loan documents, "verification of the identity of the holder in due course of the loan, and proof of the servicer's authority to service the loan[.]" *Bravo v. MERSCORP, Inc.*, No. 12-CV-884 (ENVV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (finding a "correspondence falls short of the statutory definition of a QWR" where it merely seeks documents to verify the loan).   The two letters do not relate to "servicing," as that term is defined under RESPA, because they "say[] nothing about defendant['s] receipt of scheduled periodic payments or the amounts of such payments." *Id.* at *3; *see also Dides v. Ocwen Loan Servicing, LLC*, Civ. No. WMN-12-2989, 2013 WL 2285371, at *2 (D.Md. May 21, 2013) ("the permissible scope of Qualified Written Requests under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest").   The January 19, 2013 and March 26, 2013 letters reflect Plaintiff's belief that Homeward and Ocwen did not possess the original Note and did not have authority to collect loan payments.   Indeed, Plaintiff explicitly indicated in his March 2013 correspondence to Ocwen that the purpose of the letter was to establish that Ocwen "was legally entitled to

14

enforce the Note and collect payment," which does not relate to servicing.  (ECF No. 10 ¶ 23).

In his opposition to the motion to dismiss filed by Homeward, Ocwen, and Deutsche Bank, Plaintiff contends that Homeward violated RESPA because it did not provide "a payoff statement or accounting of the loan," as requested in the January 2013 letter.  (ECF No. 22, at 4).  He further argues that his inquiry about "Ocwen's legal authority to collect payment [] is undoubtedly a central function of a servicer." (*Id.*).    Plaintiff's arguments are unavailing.    Although Plaintiff requested a payoff statement and accounting of the loan, this "bare assertion [did] not provide the servicer with 'sufficient detail' as to why plaintiff[] believe[d] the balance [was] incorrect." *Marsh v. BAC Home Loans Servicing*, No. 2:09-cv-813-Ftm-29DNF, 2011 WL 1196415 at *8 (M.D.Fla. March 29, 2011) (*quoting* 12 U.S.C. § 2605(e)(1)(B)); *Minson v. CitiMortgage, Inc.,* No. DKC-12-2233, 2013 WL 2383658, at *3-5 (D.Md. May 29, 2013) (finding that, i*nter alia*, requests for a certified copy of the original promissory note and deed of trust, and a copy of the account and general ledger statement showing the loan history did not constitute as a QWR); *Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, 858 F.Supp.2d 561, 574-75 (E.D.N.C. 2012) (finding that a letter seeking, *inter alia*, copies of loan documents, assignments of

the deed of trust and promissory note, and a loan transactional history did not qualify as a valid QWR). Plaintiff's requests challenge Homeward's and Ocwen's authority to collect payments, which do not constitute valid QWRs, and Defendants cannot be liable under RESPA for failing to respond fully. Accordingly, Plaintiff's RESPA claim will be dismissed.

### C. MCDCA and MCPA Violations

In count two of the amended complaint, Plaintiff alleges that McCabe and Deutsche Bank violated the MCDCA and the MCPA, which are actually two separate causes of action. (ECF No. 10 ¶¶ 44-52).[5] Plaintiff asserts that McCabe violated Section 14-202(8) of the MCDCA by threatening a foreclosure sale on February 5 and June 4, 2013 "with knowledge it had no right to foreclose." (*Id.* ¶ 46). Plaintiff further contends that McCabe violated the MCDCA by attempting a foreclosure sale on October 29, 2013 knowing it had no right to foreclose because "Defendants were not in possession of the original Note." (*Id.* ¶ 47). Plaintiff believes that Deutsche Bank is liable for McCabe's violations because it retained McCabe to collect the debt. (*Id.* ¶ 49).

The MCDCA provides that in collecting or attempting to collect an alleged debt, a collector may not engage in various

---

[5] Plaintiff does not allege that Homeward and Ocwen violated the MCDCA and MCPA.

activities, including "claim[ing], attempt[ing], or threaten[ing] to enforce a right with knowledge that the right does not exist." Md. Code Ann., Com. Law § 14-202(8).  To plead a claim under the MCDCA, Plaintiff must set forth factual allegations tending to establish two elements: (1) that Defendants did not possess the right to collect the amount of debt sought; and (2) that Defendants attempted to collect the debt knowing that they lacked the right to do so.  *See Pugh v. Corelogic Credco, LLC*, Civil Action No. DKC 13-1602, 2013 WL 5655705, at *4 (D.Md. Oct. 16, 2013).  The key to prevailing on a claim of MCDCA is to demonstrate that the defendants "acted with knowledge as to the *invalidity* of the debt." *Stewart v. Bierman*, 859 F.Supp.2d 754, 769 (D.Md. 2012) (emphasis in original).

There are several problems with Plaintiff's MCDCA claim.  Although Plaintiff asserts that McCabe attempted to collect a debt by sending foreclosure notices to him, the Substitute Trustees (who are attorneys with the law firm McCabe, Weisberg & Conway, LLC) were involved in the foreclosure proceeding, *not* the law firm itself.  But even assuming McCabe attempted to collect a debt, Plaintiff has not shown that it knew it lacked the right to do so.  Plaintiff's only basis for the MCDCA claim is that McCabe did not possess the original Note and thus was not authorized to enforce the lien on the Property through

17

foreclosure.   Plaintiff's challenge is based on false premises.
Maryland Rule of Procedure 14-204 allows "any successor trustee"
of a deed of trust to file a foreclosure action.   Here, the Deed
of Appointment of Substitute Trustees, recorded in the land
records of Prince George's County on February 29, 2012,
explicitly identified Deutsche Bank as the holder or authorized
holder of the Note secured by the Deed of Trust and further
appointed Substitute Trustees, acknowledging that they "shall
have all the rights, powers and authority, and be charged with
all the duties that were conferred or charged upon the
trustee(s) named in said Deed of Trust."   (ECF No. 14-1, at 27).
The Deed of Trust – the validity of which Plaintiff does not
challenge – granted the lender or the lender's agent the
authority to foreclose on the Property.   As McCabe points out,
even if the original Note contained Melvina Lewis's signature,
the validity of the Deed of Trust as security for the debt
against the Property would not be affected; assuming the Note
contained her signature, Melvina Lewis would merely be added as
a debtor, and this purported discrepancy "would not affect the
validity of the debt as to [Plaintiff]."   (ECF No. 14, at 9).
Plaintiff does not dispute that he signed the Note.   Plaintiff
asserts that Deutsche Bank is liable under the MCDCA for
retaining McCabe to collect the alleged debt.   Plaintiff has not
shown that either McCabe or Deutsche Bank attempted to collect a

debt which they knew was invalid, thus the MCDCA claim will be dismissed.

The only allegation pertaining to the MCPA claim is that Defendants are liable for attorney's fees under the MCPA "for McCabe's MCDCA violation." (ECF No. 10 ¶ 52). The MCPA establishes that, by definition, the violation of several other enumerated Maryland statutes, including the MCDCA, constitutes unfair or deceptive trade practices proscribed by the MCPA. *See generally* Md. Code Ann., Com. Law § 13-301(14) (enumerating incorporated statutes). Plaintiff's MCPA claim is meritless for a number of reasons. First, Plaintiff has not alleged an MCDCA violation, thus his MCPA claim premised on an MCDCA violation cannot withstand dismissal. Second, Section 13-104 exempts certain professionals and their services from liability under the MCPA, including lawyers, even when they are not acting in their specific professional capacity. *Robinson v. Fountainhead Title Group Corp.*, 447 F.Supp.2d 478, 490 (D.Md. 2006). Thus, McCabe, a law firm, is exempt from liability under the MCPA. Accordingly, the MCPA claim will also be dismissed.

### D. Breach of Contract

Plaintiff asserts that Defendant Ocwen breached its contractual obligation under the Deed of Trust when its agents entered the Property and attempted to change the locks without giving prior notice to Plaintiff. In the opposition to McCabe's

motion to dismiss, Plaintiff states that his breach of contract claim is against Defendants Ocwen, Homeward, and Deutsche Bank. None of the allegations in the amended complaint explain how Homeward breached a contract with Plaintiff, thus this claim against Homeward will be dismissed. It appears that Plaintiff attempts to hold Ocwen and Deutsche Bank liable for breach of contract, considering his allegation that Ocwen is an agent of Deutsche Bank, thus Deutsche Bank is liable for Ocwen's actions. (ECF No. 22, at 7).

"To state a prima facie claim for breach of contract under Maryland law, a plaintiff must allege that a contractual obligation exists and that the defendant has breached that obligation." *McCray v. Specialized Loan Servicing*, 2013 WL 1316341, at *2 (D.Md. Mar. 28, 2013). Plaintiff believes that Defendants breached the Deed of Trust by entering his Property even though it was not abandoned. Defendants argue that Ocwen's agents had authority to enter the Property in accordance with the Deed of Trust. Specifically, Paragraph 9 of the Deed of Trust states:

> If (a) Borrower fails to perform the covenants and agreements contained in the Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in *bankruptcy*, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over

20

> this Security Instrument or to enforce laws
> or regulations), or (c) Borrower has
> abandoned the Property, *then Lender may do*
> *and pay for whatever is reasonable or*
> *appropriate to protect Lender's interest in*
> *the Property and rights under this Security*
> *Instrument, including . . . securing and/or*
> *repairing the Property.*
>
> . . .
>
> Securing the Property includes, but is not
> limited to, entering the Property to make
> repairs, [and] change locks.

(ECF No. 14-1, at 11-12) (emphases added).  This section

authorized Ocwen to secure the Property and change the locks if

Plaintiff failed to perform the covenants and agreements

contained in the Deed of Trust or there was a legal proceeding –

such as a proceeding in bankruptcy – that might affect the

Lender's interest in the property.  Plaintiff's own allegations

in the amended complaint reflect that he was notified of having

defaulted on the mortgage loan in the spring or summer of 2011

and received multiple notices regarding foreclosure sale on the

Property.  Moreover, Plaintiff voluntarily filed for bankruptcy

prior to the scheduled foreclosure sale on October 29, 2013.

(ECF No. 10 ¶ 28).  Plaintiff's bankruptcy filing combined with

his default on the mortgage loan – thereby failing to perform

the covenants of the Deed of Trust – authorized the lender to do

"whatever is reasonable or appropriate to protect Lender's

interest in the Property," which included securing the Property.

Plaintiff argues that Ocwen's agents could only enter the Property if it was vacant or abandoned, which he claims was not the case here because he was still occupying the Property at the time of entry. Plaintiff points to Paragraph 7 of the Deed of Trust as the controlling provision in this instance. Paragraph 7 generally concerns preservation, maintenance, and protection of Property and allows the Lender or its agent to "make reasonable entries upon and inspections of the property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an *interior inspection* specifying such reasonable cause." (ECF No. 14-1, at 11) (emphasis added). Plaintiff claims that by entering the Property without giving him notice, Ocwen breached this provision. Plaintiff is mistaken. Paragraph 7 applies to repairs of the premises by the borrower and the lender's ability to inspect the interior of the improvements on the Property. It does not appear that there were any improvements or maintenance made to the Property which would trigger this provision. Ocwen acted within its rights pursuant to Paragraph 9 of the Deed of Trust, which covers protection of the lender's interests in the Property and rights under the Deed of Trust. Accordingly, the breach of contract claim will be dismissed.

### E. Declaratory Judgment

Plaintiff includes as a separate count in his amended complaint a request for declaratory judgment that "the original Note was signed by Mr. & Mrs. Lewis and that the Defendants are not in possession of the original Note."  (ECF No. 10 ¶ 61). The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such a declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Fourth Circuit has explained:

> [I]t is elementary that a federal court may properly exercise jurisdiction in a declaratory judgment proceeding when three essentials are met: (1) the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment; (2) the court possesses an independent basis for the jurisdiction over the parties (e.g., federal question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004).  Defendants contend that Plaintiff cannot bring a declaratory judgment action because no actual controversy presently exists.  Specifically, Defendants note that the validity of the Note concerns their rights to foreclose on the Property, which is no longer an issue because

Plaintiff voluntarily filed for bankruptcy in October 2013 and the bankruptcy case was closed in December 2013. Plaintiff has not stated the existence of a controversy which should be settled. *See, e.g., Lomp*, 2013 WL 6528909, at *4 (dismissing action for declaratory judgment where there was no existing effort to enforce the Note or Deed of Trust through foreclosure). Accordingly, count three will also be dismissed.

## IV.  Conclusion

For the foregoing reasons, both motions to dismiss will be granted.  A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
