IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| BERNARD LEWIS | : | |
| | : | |
| v. | : | Civil Action No. DKC 13-1561 |
| | : | |
| MCCABE, WEISBERG & CONWAY, LLC et al. | : | |
| | : | |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this consumer lending action is a motion for reconsideration filed by Plaintiff Bernard Lewis.  (ECF No. 26).  The issues have been briefed, and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be denied.

**I.  Background**

The facts and procedural history have been explained in a prior memorandum opinion and need not be repeated.  (ECF No. 24).  On August 4, 2014, the court issued a memorandum opinion and order granting two motions to dismiss filed by Defendants McCabe, Weisberg & Conway, LLC ("McCabe"), Ocwen Loan Servicing, LLC. ("Ocwen"), Deutsche Bank National Trust Company ("Deutsche Bank"), and Homeward Residential, Inc. ("Homeward").  (ECF Nos. 24 & 25).  On September 2, 2014, Plaintiff filed a motion for

reconsideration.    (ECF  Nos.  26)    McCabe,  Deutsche  Bank,
Homeward,  and  Ocwen  opposed  the  motion.    (ECF  Nos.  27 & 28).

## II.   Standard of Review

Because  Plaintiff's  motion  was  filed  within  28  days  of  the
court  entering  judgment  it  is  governed  by  Fed.R.Civ.P.  59(e)
rather   than    Rule   60(b),   which   governs   motions   for
reconsideration  filed  more  than  28 days  after  judgment.  *See MLC
Auto, LLC v. Town of S. Pines*,  532 F.3d 269, 280 (4th Cir. 2008);
*Classen  Immunotherapies,  Inc.  v.  King  Pharmaceuticals,  Inc.*,  981
F.Supp.2d 415, 419 (D.Md. Oct. 31, 2013).   Under Rule 59(e), a
motion  to  alter  or  amend  may  be  granted  only:  "(1)  to
accommodate  an  intervening  change  in  controlling  law;  (2)  to
account  for  new  evidence  not  available  at  trial;  or  (3)  to
correct  a  clear  error  of  law  or  prevent  manifest  injustice."
*Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th
Cir. 1998).   Motions  for  reconsideration  are  "an  extraordinary
remedy  which  should  be  used  sparingly."  *Pacific  Ins.  Co.  v.  Am.
Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998).

## III. Analysis

Plaintiff   asserts   that   the   court   clearly   erred   in   its
dismissal  of  his  claims  asserting  violations  of  the  Real  Estate
Settlement  Procedures  Act  ("RESPA")  and  the  Maryland  Consumer
Debt  Collection  Act  ("MCDCA"),  Md.  Code  Ann.,  Com.  Law,  § 14-201

*et seq.*, as well as his breach of contract and declaratory judgment claims.

### A.   RESPA

Plaintiff contends that the court erred in finding that his January 19, 2013 and March 26, 2013 letters to Homeward and Ocwen, respectively, were not valid qualified written requests ("QWRs") under RESPA because they did not relate to servicing. (ECF No. 26, at 2-6). Section 2605(e) of RESPA requires a loan servicer to provide a written response acknowledging receipt within five days if the servicer receives a QWR from the borrower "for information relating to the *servicing*" of a loan. 12 U.S.C. § 2605(e)(1)(A) (emphasis added). Under RESPA, "servicing" is defined as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts . . . and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

Plaintiff makes several arguments in his motion for reconsideration as to the RESPA claim. First, he asserts that "the letter(s) related to events occurring after Defendants' role as servicers. For example, [] Plaintiff was not requesting the copy of the Note as it existed at settlement. Instead, []

*Plaintiff was specifically requesting a copy of the Note as it presently existed in an effort to ascertain who presently held the Note.* As [] Plaintiff stated in his letter, his purpose was to determine the Defendant(s) could collect payment." (ECF No. 26, at 3) (emphasis added). As explained in the August 4, 2014 memorandum opinion, however, inquiries regarding a servicer's authority to enforce the Note or collect payments do not qualify as QWRs:

> Although Plaintiff likely intended that [the letters] serve as QWRs, in substance, he sought the original loan documents, "verification of the identity of the holder in due course of the loan, and proof of the servicer's authority to service the loan[.]" *Bravo v. MERSCORP, Inc.*, No. 12-CV-884 (ENVV) (LB), 2013 WL 1652325, at *3 (E.D.N.Y. Apr. 16, 2013) (finding a "correspondence falls short of the statutory definition of a QWR" where it merely seeks documents to verify the loan). The two letters do not relate to "servicing," as that term is defined under RESPA, because they "say[] nothing about defendant['s] receipt of scheduled periodic payments or the amounts of such payments." *Id.* at *3; *see also Dides v. Ocwen Loan Servicing, LLC*, Civ. No. WMN-12-2989, 2013 WL 2285371, at *2 (D.Md. May 21, 2013) ("the permissible scope of Qualified Written Requests under RESPA is limited to information related to the servicing of loans, specifically the receipt of payments from a borrower and the making of payments of principal and interest"). *The January 19, 2013 and March 26, 2013 letters reflect Plaintiff's belief that Homeward and Ocwen did not possess the original Note and did not have authority to collect loan payments.* Indeed, Plaintiff explicitly indicated in his March 2013

> correspondence to Ocwen that the purpose of
> the letter was to establish that Ocwen "was
> legally entitled to enforce the Note and
> collect payment," which does not relate to
> servicing. (ECF No. 10 ¶ 23).

(ECF No. 24, at 14-15) (emphasis added).  The analysis in *Best
v. Samuel I. White, P.C.*, Civ. No. WDQ-13-2348, 2014 WL 2575771,
at *3 (D.Md. June 6, 2014), applies here:

> Best argues that his letters were QWRs
> because Capital One's possession of the Note
> relates to its entitlement to service the
> Note, as only a holder or owner can enforce
> the Note. [] However, *communications that
> seek to obtain proof of the servicer's
> authority to service the loan are not QWR's
> under RESPA. . . .* Accordingly, Best's
> letters are not valid QWRs, and Best has
> failed to state a violation of RESPA.

(emphasis added); *see also, e.g., Ward v. Sec. Atl. Mortgage
Elec. Registration Sys., Inc.*, 858 F.Supp.2d 561, 574-75
(E.D.N.C. 2012) (dismissing RESPA claim when the amended
complaint lacked allegations about irregularities in loan
servicing and "the notice does not identify purported errors
with Plaintiffs' account or ask questions relating to BAC's
servicing thereof."). Thus, Plaintiff's argument that the
letters constituted QWRs because he "sought to determine that []
Defendant was entitled to collect the payment before making a
payment," (ECF No. 26, at 4), does not provide a basis for
reconsidering dismissal of the RESPA claim.

Plaintiff's next argument is that "[e]ven if the request for a copy of the Note did not relate to servicing, the portion of Plaintiff's letter(s) that disputed the assessed interest payments, escrow payments, fees and expenses, did relate to servicing." (ECF No. 26, at 5). Nowhere in the amended complaint did Plaintiff assert that his letters disputed payments made on the loan. Plaintiff's allegations pertaining to the RESPA claim were summarized in the August 4, 2014 memorandum opinion:

> Although Plaintiff does not attach the two letters to his amended complaint, he alleges that in the January 19, 2013 letter to Homeward, he: (1) stated that the Note was "fabricated" and not the original Note; (2) announced that he made arrangements to pay the debt; (3) asked for a payoff statement and a current certified copy of the Note; and (4) requested to inspect the original Note and asked for an accounting of payments and charges on the loan. (ECF No. 10 ¶ 20). In the March 26, 2013 letter to Ocwen, Plaintiff allegedly: (1) requested a current, certified copy of the Note; (2) requested a date and time to inspect the original Note; (3) explained that his purpose was to establish that Ocwen was legally entitled to enforce the Note and collect payment; and (4) stated that he was prepared to satisfy the debt, but wanted to verify that Ocwen was the "holder" and that the original Note would be returned to him. (*Id.* ¶ 23).

In fact, the allegations in the amended complaint contradict Plaintiff's new and bare assertion that his letters[1] disputed the assessed interest payments, escrow payments, fees and expenses.  The amended complaint asserted that "[a]s a result of the conduct, actions and inactions of [] Defendants Ocwen and Homeward, [] Plaintiff: . . . (b) has been assessed interest, fees, collection costs[,] and other expenses that he would not be liable for had he received the requested documents required to sell his home[,]" (ECF No. 10 ¶ 42), which is a different allegation than the one he makes now that the letters sent to Ocwen and Homeward disputed this information.  *See, e.g., Best v. Samuel I. White, P.C.*, Civ. No. WDQ-13-2348, 2015 WL 799443, at *3 (D.Md. Feb. 24, 2015) (denying a motion to reconsider dismissal of a RESPA claim and noting that plaintiff "cannot recast his allegations as inquiries into 'servicing' of the loan as defined by RESPA. []  His complaint alleged that his letters sought proof that Capital One held the Note and was entitled to receive payment; he did not allege that the letters requested information about the receipt of periodic payments or the amounts of such payments.").  Moreover, in the August 4, 2014 memorandum opinion, the court considered whether Plaintiff's purported request for "a payoff statement or

---

[1] Plaintiff does not identify which of the two letters he believes qualify as QWRs requested this information.

accounting of the loan" in the January 2013 letter could constitute a QWR, but rejected the argument:

> Plaintiff's arguments are unavailing. Although Plaintiff requested a payoff statement and accounting of the loan, this "bare assertion [did] not provide the servicer with 'sufficient detail' as to why plaintiff[] believe[d] the balance [was] incorrect." *Marsh v. BAC Home Loans Servicing*, No. 2:09-cv-813-Ftm-29DNF, 2011 WL 1196415 at *8 (M.D.Fla. March 29, 2011) (*quoting* 12 U.S.C. § 2605(e)(1)(B)); *Minson v. CitiMortgage, Inc.,* No. DKC-12-2233, 2013 WL 2383658, at *3-5 (D.Md. May 29, 2013) (finding that, *inter alia*, requests for a certified copy of the original promissory note and deed of trust, and a copy of the account and general ledger statement showing the loan history did not constitute as a QWR); *Ward v. Security Atlantic Mortg. Electronic Registration Systems, Inc.*, 858 F.Supp.2d 561, 574-75 (E.D.N.C. 2012) (finding that a letter seeking, *inter alia*, copies of loan documents, assignments of the deed of trust and promissory note, and a loan transactional history did not qualify as a valid QWR).

(ECF No. 24, at 15-16).

Based on the foregoing, Plaintiff has not demonstrated that the court clearly erred in dismissing his RESPA claim.

### C. MCDCA

Plaintiff asserted in his amended complaint that McCabe and Deutsche Bank violated the MCDCA.[2]   (ECF No. 10 ¶¶ 44-52). Plaintiff believes that the court erred in concluding that he

---

[2] Plaintiff does not allege that Homeward and Ocwen violated the MCDCA.

failed to state a claim under the MCDCA. (*See* ECF No. 26, at 6-8). The amended complaint alleged that McCabe violated Section 14-202(8) of the MCDCA by threatening to sell Plaintiff's property on February 5, 2013 and June 4, 2013 "with knowledge it had no right to foreclose." (ECF No. 10 ¶ 46). As stated in the August 4, 2014 memorandum opinion, Section 14-202(8) provides that in collecting or attempting to collect an alleged debt, a collector may not "[c]laim, attempt, or threaten to enforce a right with knowledge that the right does not exist." Plaintiff appears to argue that the court erred in purportedly finding "that [] Plaintiff failed to plead th[at] Defendant had knowledge that the debt was invalid. No such requirement is found in the MCDCA." (ECF No. 26, at 6). According to Plaintiff, he alleged that Defendant cannot enforce the debt, not that the debt is invalid. (*Id.* at 8).

Plaintiff misconstrues the August 4, 2014 memorandum opinion. The amended complaint alleged McCabe violated Section 14-202(8) of the MCDCA by threatening a foreclosure sale on February 5 and June 4, 2013 "with knowledge it had no right to foreclose." (ECF No. 10 ¶ 46). Plaintiff further contended that McCabe violated the MCDCA by attempting a foreclosure sale on October 29, 2013 knowing it had no right to foreclose because "Defendants were not in possession of the original Note." (*Id.* ¶ 47). Plaintiff argued that Deutsche Bank is liable for

McCabe's violations because it retained McCabe to collect the debt. (*Id.* ¶ 49). As indicated, the dismissal of the MCDCA claim was based on the fact that Plaintiff had not pled that McCabe knew that it did not have a right to collect or attempt to collect a debt. More specifically, in concluding that Plaintiff failed to plead a violation of the MCDCA, the court reasoned, in relevant part:

> There are several problems with Plaintiff's
> MCDCA claim. Although Plaintiff asserts
> that McCabe attempted to collect a debt by
> sending foreclosure notices to him, the
> Substitute Trustees (who are attorneys with
> the law firm McCabe, Weisberg & Conway, LLC)
> were involved in the foreclosure proceeding,
> *not* the law firm itself. But even assuming
> McCabe attempted to collect a debt,
> *Plaintiff has not shown that it knew it*
> *lacked the right to do so. Plaintiff's only*
> *basis for the MCDCA claim is that McCabe did*
> *not possess the original Note and thus was*
> *not authorized to enforce the lien on the*
> *Property through foreclosure. Plaintiff's*
> *challenge is based on false premises.*
> Maryland Rule of Procedure 14-204 allows
> "any successor trustee" of a deed of trust
> to file a foreclosure action. Here, the
> Deed of Appointment of Substitute Trustees,
> recorded in the land records of Prince
> George's County on February 29, 2012,
> explicitly identified Deutsche Bank as the
> holder or authorized holder of the Note
> secured by the Deed of Trust and further
> appointed Substitute Trustees, acknowledging
> that they "shall have all the rights, powers
> and authority, and be charged with all the
> duties that were conferred or charged upon
> the trustee(s) named in said Deed of Trust."
> (ECF No. 14-1, at 27). *The Deed of Trust –*
> *the validity of which Plaintiff does not*
> *challenge - granted the lender or the*

> *lender's agent the authority to foreclose on
> the Property.* As McCabe points out, even if
> the original Note contained Melvina Lewis's
> signature, the validity of the Deed of Trust
> as security for the debt against the
> Property would not be affected; assuming the
> Note contained her signature, Melvina Lewis
> would merely be added as a debtor, and this
> purported discrepancy "would not affect the
> validity of the debt as to [Plaintiff]."
> (ECF No. 14, at 9). Plaintiff does not
> dispute that he signed the Note. Plaintiff
> asserts that Deutsche Bank is liable under
> the MCDCA for retaining McCabe to collect
> the alleged debt. Plaintiff has not shown
> that either McCabe or Deutsche Bank
> attempted to collect a debt which they knew
> was invalid, thus the MCDCA claim will be
> dismissed.

(ECF No. 24, at 17-18) (emphases added). The conclusory

allegation that McCabe did not have a right to foreclose and

that it knew it had no right to foreclose because "Defendants

were not in possession of the original Note," (ECF No. 10 ¶ 47),

is insufficient to plead a plausible violation of Section 14-

202(8) of the MCDCA for the reasons explained in the memorandum

opinion and set forth above. Accordingly, Plaintiff's arguments

urging reconsideration of the dismissal of the MCDCA claim are

unavailing.

### D. Breach of Contract

Next, Plaintiff argues that the court erred in dismissing

the breach of contract claim, although his arguments on this

front are unclear. He asserts that "the Court erred by

inferring that [] Plaintiff was in default under the note to []

Defendant, when [] Plaintiff's allegations state [] Defendants were not holders of the Note." (ECF No. 26, at 8). He further contends that "the Court erred by relying on the Appointment of Substitute Trustee when the contents of that document are disputed." (*Id.*). Finally, he argues that even if Defendants had standing to enforce their rights under the Deed of Trust, they are limited to actions that are "reasonable and appropriate to protect the Lender's interest in the Property," and changing the locks in response to Plaintiff's bankruptcy filing is not "reasonable or appropriate" action. (*Id.* at 9).

None of these arguments demonstrate a clear error of law in dismissing the breach of contract claim. The amended complaint alleged that Defendant Ocwen breached its contractual obligation under the Deed of Trust when its agents entered the Property and attempted to change the locks without giving prior notice to Plaintiff.[3] The court concluded that Paragraph 9 of the Deed of Trust, (ECF No. 14-1, at 11-12), authorized Ocwen to secure the Property and change the locks if Plaintiff failed to perform the covenants and agreements contained in the Deed of Trust or there was a legal proceeding – such as a proceeding in bankruptcy – that might affect the Lender's interest in the property. The

---

[3] The prior memorandum opinion presumed that Plaintiff attempted to hold Ocwen and Deutsche Bank liable for breach of contract, considering his allegation that Ocwen is an agent of Deutsche Bank, thus Deutsche Bank is liable for Ocwen's actions. (ECF No. 22, at 7).

court held that "Plaintiff's bankruptcy filing combined with his default on the mortgage loan – thereby failing to perform the covenants of the Deed of Trust – authorized the lender to do 'whatever is reasonable or appropriate to protect Lender's interest in the Property,' which included securing the Property." (ECF No. 24, at, 21).  None of Plaintiff's arguments in the motion for reconsideration undermine this conclusion.

### E. Declaratory Judgment

Finally, Plaintiff argues that the court erroneously dismissed his request for a declaratory judgment. (*See* ECF No. 26, at 9).  Plaintiff included as a separate count in his amended complaint a request for declaratory judgment that "the original Note was signed by Mr. & Mrs. Lewis and that the Defendants are not in possession of the original Note." (ECF No. 10 ¶ 61).  In dismissing the claim for declaratory judgment, the court noted:

> Defendants contend that Plaintiff cannot bring a declaratory judgment action because no actual controversy presently exists. Specifically, Defendants note that the validity of the Note concerns their rights to foreclose on the Property, which is no longer an issue because Plaintiff voluntarily filed for bankruptcy in October 2013 and the bankruptcy case was closed in December 2013. *Plaintiff has not stated the existence of a controversy which should be settled.*

(ECF No. 24, at 23-24) (emphasis added).   In his motion for reconsideration, Plaintiff asserts that "[a]lthough [] Defendant has dismissed the foreclosure action, [] Defendant is still seeking to collect payment. [] Plaintiff contends that [] Defendant is not a holder of the Note and therefore not entitled to collect payment." (ECF No. 26, at 9).   Plaintiff asserts that his "declaratory judgment claim seeks to adjudicate whether Defendant can or cannot collect payment under the Note." (*Id.*).

The only allegation in the amended complaint in support of the declaratory judgment claim was that Defendants had no right to enforce the Note by way of foreclosure because they did not possess the original Note (which Plaintiff maintains contained both his and his wife's signatures). (*See* ECF No. 10 ¶¶ 53-61). As McCabe points out, "[a]t the time the court's Order was entered[,] the foreclosure action against Plaintiff had been dismissed and [] Plaintiff had a pending bankruptcy case that would have obviated any attempt to foreclose. As such, there was no case or controversy by which [] Plaintiff may have been entitled to declaratory judgment." (ECF No. 27 ¶ 23). Plaintiff has not established that the court clearly erred in its conclusion that there was no actual case or controversy for a declaratory judgment.   In any event, Plaintiff's new assertion that Defendant is not entitled to collect payment under the Note because purportedly it does not hold the original note fails to

state an actual controversy.   Defendants are not required to present the original Note to Plaintiff in order to enforce the note.   *See, e.g., Jones v. Bank of New York Mellon*, Civ. Action No. DKC 13-3005, 2014 WL 3778685, at *4 (D.Md. July 29, 2014) (rejecting argument that unless defendant can produce the original note for the record, it has no authority to enforce the note); *Harris v. Household Finance Corp.*, Civ. Case No. RWT 14-606, 2014 WL 3571981, at *2 (D.Md. July 18, 2014) ("there is no recognizable claim to demand in an action brought by a borrower that the lender produce 'wet ink' signature documents.").

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for reconsideration will be denied.   A separate order will follow.

_____   /s/   _____
DEBORAH K. CHASANOW
United States District Judge